ALEXANDER TOURTELOTTE, APPELLEE, V. A. H. PEARCE ET AL., APPELLANTS.

[FILED JUNE 27, 1889.]

1. **Action Quia Timet:** ADVERSE POSSESSION. A party who has been in the actual, open, notorious, exclusive, adverse possession of real estate for ten years thereby acquires an absolute title to such real estate, and may maintain an action to have certain deeds which are clouds upon the title set aside and declared void, and quiet his possession in the premises.

2. ———: ———: PLEADING: EVIDENCE. The failure to allege in the petition that the plaintiff had been in the *exclusive* adverse possession of the premises for ten years, and of the court to find that fact in the decree, is not a material error after judgment, where the proof shows the possession to have been of that character.

3. **Adverse Possession.** Acts of notoriety, such as building a fence around the land, entering upon it and making improvements thereon, and the payment of taxes on the land, are sufficient to constitute adverse possession.

APPEAL from the district court of Otoe county. Heard below before CHAPMAN, J.

*C. W. Seymour*, for appellants, cited: *Doolittle v. Tice*, 41 Barb., 181; Wood on Limitation of Actions, 514, sec. 257; *Gatling v. Lane*, 17 Neb., 83.

*E. F. Warren*, for appellee, cited: *Horbach v. Miller*, 4 Neb., 47; *Gatling v. Lane*, 17 Id., 79; *Haywood v. Thomas*, Id., 240; *Pettit v. Black*, 13 Id., 152; *Stettnische v. Lamb*, 18 Id., 626.

MAXWELL, J.

This action was brought in the district court of Otoe county to quiet the plaintiff's title to certain real estate and on the trial a decree was entered in his favor. The plaintiff alleges in his petition:

"1. That he is the owner in fee simple and in the possession of the following described lots or parcels of land, situate in the county of Otoe, in said state of Nebraska, known as lots numbers one and two in block number thirty-one, in Greggsport, an addition to Nebraska City, according to the recorded plat of said addition; that he has been thus in the undisturbed, peaceable, and adverse possession thereof, and of the whole thereof, for the period of seventeen years last past, and especially adverse to the claims of the said defendants above named, and of each of them.

"2. That the said defendant, Milton Fornia, claims to have some title to said described premises by virtue of a certain deed or deeds from one Thomas B. Stevenson to him, but that neither the said Stevenson, nor any of his grantors, nor the said defendant Fornia, ever had possession of the said premises, or any part thereof; that the said defendant, A. H. Pearce, also claims some title thereto, by virtue of certain deeds to him executed from other parties, but that neither he nor his grantors ever had the possession thereof; that the said defendant, Jacob Sichl, has, or claims some title or interest therein, by virtue of certain deeds from one Sarah E. Schoenheit to Richard A. White, and from the said White to the said defendant Jacob Sichl, but that no possession has ever been had thereunder by the said Sichl, or either of his grantors; that said deeds are recorded

in the office of the clerk of said county of Otoe, and that the same constitute clouds upon the title of this said plaintiff in and to the said premises and injure the market value thereof; that neither of the said defendants will institute an action to determine the legal title to the said premises, and that this plaintiff is without remedy in the premises; that the plaintiff has made lasting and valuable improvements thereon.

"Wherefore this said plaintiff prays for a decree of this honorable court in his favor, and against the said defendants, quieting his title in and to said described lots, against the claims and demands of the said defendants and each of them; that the cloud caused by that record of the several deeds to the several defendants, in the office of the clerk of said county, may be removed, and the same and each of them decreed to be no cloud upon the title of the said plaintiff in and to said premises; that the said defendants and each of them may be decreed to have no title in or to said described lots, or to either of them, but that the title thereto may be decreed to be in this plaintiff, discharged of all claim in law or in equity of the claims or demands of the said defendants or of either of them; that the said defendants and each of them may be perpetually enjoined and forbidden from beginning or prosecuting any suit at law or in equity against this plaintiff or his grantees to recover the possession thereof, or any part thereof, and may be perpetually forbidden and enjoined from setting up any claim or claiming any interest or estate therein adverse to the title of this said plaintiff, or from disturbing him and his said grantees in the quiet and peaceable enjoyment of the said premises, or any part thereof, and for such other or further order or relief in the premises as equity and good conscience may require, the circumstances of this case considered, and for costs of suit.

"Plaintiff asks the following deeds declared void, as hereinbefore stated: From Thomas B. Stevenson to Milton

Fornia, dated April 13, 1870, recorded in book 'T' of deeds at page 408; from John E. Shepherd to the defendant Pearce, June 25, 1874, and recorded in book 'Z' of deeds at page 228; from Sarah E. Schoenheit to R. A. White et al., dated October 24, 1887."

The defendant Sichl answered the petition in substance, denying the allegations thereof, and alleging that he has the legal title to said lots, and that the plaintiff's claim is a cloud on the same, and praying for affirmative relief. On the trial of the cause a decree was rendered against Sichl as follows:

" Now on this day this cause came on to be heard upon the pleadings and proof adduced by the several parties upon the issues joined between the said plaintiff and the said defendant, Jacob Sichl; and the court, having duly considered the same and listened to the arguments of counsel, and being well advised in the premises, doth find the issues so as aforesaid joined between the said plaintiff and the said defendant, Jacob Sichl, in favor of the plaintiff, and against the said defendant.

"And the court finds that the said plaintiff has been in the undisturbed, peaceable, notorious, open, and adverse possession of the premises described in the petition, to-wit, lots numbered one and two in block numbered thirty-one, in Greggsport, an addition to Nebraska City, in said county of Otoe, for more than ten years last past, before the commencement of this action, claiming to own the same as against all the world, and especially as against the said defendants herein, and against the claims of the said defendant, Jacob Sichl, and that the plaintiff is entitled to a decree quieting his said title as prayed in his said petition herein.

" It is therefore considered, adjudged, and decreed by the court in said cause, that the title and possession of the said plaintiff in and to the said premises, to-wit, lots numbered one and two in block numbered thirty-one, in Greggsport,

an addition to Nebraska City, in said county of Otoe, be and the same is hereby forever settled and quieted in the plaintiff as against all claims or demands in law or in equity by the said defendant, Jacob Sichl, and those to claim or claiming by, through, or under him.

"That the deeds from Sarah E. Schoenheit to R. A. White et al., dated October 24, 1887, recorded in book of deeds No. 23 of the records of Otoe county, Nebraska, at page 188; the deed from the said R. A. White et al., to the defendant, Jacob Sichl, dated November 8, 1887, and recorded in the records of said county at page 487 of book 22 of deeds, and all other deeds in said chain of title be, and the same are hereby, canceled and removed as clouds upon the title of the said plaintiff in and to said described premises.

"And it is herein further ordered and decreed that the said defendant, Jacob Sichl, and those claiming or to claim by, through, or under him, be, and he and they hereby are, perpetually enjoined and forbidden to claim any right, title, interest, or estate in or to said premises, by virtue of said deeds or either of them, hostile or adverse to the possession and title of the said plaintiff therein; and said defendant, Jacob Sichl, and those claiming under him are hereby perpetually forbidden and enjoined from commencing or bringing any suit at law or in equity to disturb the said plaintiff in his said possession and title thereto, and from setting up any claim or interest or estate therein adverse to the title of the plaintiff therein, and from disturbing the plaintiff in the quiet and peaceable enjoyment of said described premises.

"And it is further considered and adjudged that the plaintiff have and recover his costs in this behalf expended, against the defendant, Jacob Sichl, taxed at $........., and execution is awarded therefor."

It will be observed that the petition fails to allege and the court to find that the plaintiff has been in the *exclu-*

*sive* adverse possession of the property in question for any period of time. This defect will be considered waived after judgment where the testimony shows, as in this case, the plaintiff has been in the open, exclusive, and notorious adverse possession of the lots in question for a period exceeding ten years, viz., seventeen years; that he had partly enclosed the same and cultivated them for more than ten years. Leaving out of consideration the fencing, the cultivation of the lots as owner for the statutory period and payment of the taxes thereon are sufficient to constitute adverse possession and pass a good title to the party in possession. The statute is one of repose, and it is safe to assume that any person who claims a title or interest in the land in opposition to that of the party in possession will assert it within the time fixed by statute. The security of titles and welfare of society are best promoted by closing the doors of the courts against stale claims which experience has shown spring up at great distances of time when important witnesses are dead, or material evidence is lost or destroyed. These stale claims in many cases are bought up for a trifle, or litigated as a speculation and without any real merit in them. The statute, therefore, was designed to protect the occupant in possession of land as owner, and make his title complete after ten years of such possession.

The effect of the statute is very clearly stated by Judge GANTT in *Horbach v. Miller*, 4 Neb., 47, quoting from *Graffius v. Tottenham*, 1 W. & S. (Pa.), 488: "That 'the title of the original owner is unaffected and untrammeled till the last moment; and when it is vested in the adverse occupant by the completion of the statutory bar, the transfer has relation to nothing which preceded it: the moment of conception is the instant of birth.' Therefore 'the operation of the statute takes away the title of the owner and transfers it in legal effect to the adverse occupier;' and 'one who purchases the written title of the owner, buys a title which by operation of law was fairly vested in the adverse

occupant.' (*Schall v. The Williams Valley Railroad Co.*, 35 Penn. State, 204.)" And the character of the possession is stated by the same eminent judge as follows: "It is, however, insisted that this possession must not merely be possession, but that this possession must be under a claim of right for the whole statutory period. This is true; but the question is, what constitutes such a claim of. right? In answer to this, it is only necessary to observe that the rule seems to be well settled that acts of notoriety, such as building a fence around the land, entering upon the land and making improvements thereon, raising crops and felling trees thereon, are presumptive evidence and evincive of intention to assert ownership over and possession of the property; and taxation of the land for a series of years to the person claiming it, and the payment of taxes by him, are competent evidence tending to show ownership. (*Elliott v. Pearl*, 10 Pet., 412; *Alden v. Gilmore*, 13 Maine, 178; *Little v. Libey*, 2 Greenleaf (Me.), 242; *Miller v. Shaw*, 7 Sergt. and Rawle, 136; *Farrar v. Fessenden*, 39 New Hamp., 277; Angell on Limitations, sec. 395.) So is possession made out by placing on the premises buildings and receiving the rents and profits thereof. (*Poignard v. Smith*, 6 Pick., 177; *Gatling v. Lane*, 17 Neb., 77.)"

In the case last cited it is said (page 83): "The effect of the statute is to quiet titles to real estate, by fixing a time within which the actual owner must commence his action for the recovery of the estate. If no action is commenced within the statutory period, the occupier obtains an absolute right of exclusive possession of the premises, not only against the former owner but all the world. (*Trim v. McPherson*, 7 Coldw. (Tenn.), 15; *Abell v. Harris*, 11 G. & J. (Md.), 367; *Cooper v. Smith*, 9 S. & R., 26.) And this rule will apply as to the land actually occupied — if the possession was adverse, whether the party held under color of title or not." In *Stettnische v. Lamb*, 18 Neb., 619, it was held that possession may be tacked where one

comes in under the other and the possessory estates are connected and continuous. (*O'Brien v. Gaslin*, 20 Neb., 349.)

In the case at bar the testimony shows that the plaintiff has a complete and perfect title to the lots in question by adverse possession, and that the claims of the defendants thereto, whatever they may have been, are barred by lapse of time. It also appears that the deeds to the defendants are clouds upon the plaintiff's title which impair its value, and that he is entitled to have the same canceled and set aside.

The decree, therefore, is right and is in all things affirmed.

DECREE AFFIRMED.

THE other Judges concur.