Crawford v. Galloway.

29  261
32   60

29  261
33  570

29  261
60  732

---

JAMES C. CRAWFORD v. WILLIAM C. GALLOWAY.

[FILED APRIL 1, 1890.]

1. **Real Estate:** AGREEMENT TO CONVEY: BREACH.  *Held,* That a preponderance of the testimony tended to prove that the block of lots in dispute had been promised by the grantor to be conveyed to the defendant in lieu of a block sold to the vendee, but conveyed to another party.

2. **Adverse Possession.**  Defense of adverse possession for more than ten years, *held,* to be established.

3. ———— : TAXES PAID BY CLAIMANT.  When the plaintiff holding the legal title has paid taxes on the land which should have been paid by the owner, the former will not be divested of his entire interest therein until the taxes and interest have been repaid.

APPEAL from the district court for Antelope county. Heard below before NORRIS, J.

*N. D. Jackson,* and *J. C. Crawford,* for appellant:
The reason for the rule which allows adverse possession

to ripen into title is not the merit of the occupant's claim, but the bad policy of permitting lands to lie uncultivated. (Sedgwick & Waite, Trial of Title, sec. 727.) But this reason does not apply to town lots, and the nature of the possession is determined by the character and uses of the land. (*Bell v. Denson*, 56 Ala., 449; *Creech v. Jones*, 5 Sneed [Tenn.], 631, 636; *Royall v. Lisle*, 60 Am. Dec., 712; 36 Id., 108; 3 Id., 227, and note; 10 Id., 609; 13 Id., 183; Sedgwick & Waite, 730, 733, 734.) Adverse possession must be manifest at all times to the owner; merely plowing the land in the spring and letting it grow up to weeds the balance of the year is not sufficient. (Tiedeman on Real Property, sec. 714; *Pedrick v. Searle*, 5 Serg. & R. [Pa.], 240; *Den. v. Mulford*, Hayw. [N. Car.], 311; *Webb v. Richardson*, 42 Vt., 465; *San Francisco v. Fulde*, 37 Cal., 349; *Cook v. Clinton*, 64 Mich. 309.) Color of title is that which appears to be a title. (Sedgwick & Waite, 762.) Premises must be enclosed or actually occupied. (*Gillespie v. Sawyer*, 15 Neb., 540; *Trotter v. Cassady*, 3 A. K. Marsh. [Ky.], 365 [13 Am. Dec., 183, and note].) Any other possession is too loose and equivocal. (Sedgwick & Waite, secs. 719, 720; Id., 727; *Haywood v. Thomas*, 17 Neb., 237; *Gatling v. Lane*, Id., 80.) Lands entered under a simple *claim* of title can be held only by *pedis possessio* (*Bailey v. Irby*, 2 Nott & McC. [S. Car.], 343; *Gibson v. Martin*, 1 Har. & J. [Md.], 545; *Hog v. Perry*, 1 Litt. [Ky.], 171; *Shearer v. Clay*, Id., 260; *Smith v. Nowells*, 2 Id., 160; *Braxdale v. Speed*, 1 A. K. Marsh. [Ky.], 106; *Smith v. Mitchel*, Id., 207; *Skyle's Heirs v. King's Heirs*, 2 Id.; *Anderson v. Turner*, 3 Id., 133; *Doolittle v. Linsley*, 2 Aiken [Vt.], 155; *Gatling v. Lane*, 17 Neb., 80; *Haywood v. Thomas*, Id., 237); which means abode. (2 Burrill, Law Dictionary, 313.) As to what constitutes adverse possession: 2 Burrill's L. D., 312, 313; *Horbach v. Miller*, 4 Neb., 46; *Hull v. C., B. & Q. R. R.*, 21 Id., 373; Max-

well, Pl. & Pr. .[4th Ed.], 386, n.; *City of St. Louis v. Gorman*, 29 Mo., 593 [60 Am. Dec., 712]; *Morrison v. Kelley*, 22 Ill., 610 [74 Am. Dec., 169]; Sedgwick & Waite, Trial of Title, 728–30.)    Possession is adverse only to the extent of inclosure. (*Hammond v. Warfield*, 2 Har. & J. [Md.], 151; *Hall v. Gittings*, Id., 380; *Jackson v. Camp*, 1 Cow. [N. Y.], 605; *Prevost v. Johnson*, 9 Mart.,123; *Davidson v. Beatty*, 3 Har. & McH. [Md.], 621; *Smith v. Hosmer*, 7 N. H., 436; *Watrous v. Southworth*, 5 Conn., 305; *Hatch v. Vt. Cent. R. Co.*, 28 Vt., 142; *Robinson v. Douglas*, 2 Aiken [Vt.], 364; *Bell v. Longworth*, 6 Ind., 273; *Armstrong v. Risteau*, 5 Md., 265.)    Appellee is estopped to deny appellant's title by acquiescence in payment of taxes by the latter. (*Gillespie v. Sawyer*, 15 Neb., 540.)

*Frick & Dolezal, contra:*

Appellee's possession since 1874 has been adverse, actual, open, exclusive, and notorious, and in law sufficient. (*Ewing v. Bennett, supra; Ridgway v. Holliday*, 59 Mo., 444; *Unger v. Mooney*, 63 Cal., 586 [49 Am. Rep., 100]; *Grim v. Dyar*, 3 Duer [N. Y.], 354; *Coleman v. Billings*, 80 Ill., 183; *Leeper v. Baker*, 68 Mo., 400; *Canfield v. Hard*, 58 Vt., 217; *Elliott v. Dycke*, 78 Ala., 150; *Hardy v. Riddle*, 24 Neb., 670; *Matter of Department of Parks*, 73 N. Y., 560.)    His possession continued as to the whole, so long as his purpose was manifested by actual possession of any portion. (1 Am. & Eng. Encyc. of Law, 279, sub-div. 35, n. 2; *Magee v. Magee*, 37 Miss., 138; *Niles v. Davis*, 60 Id., 750; *Rannels v. Rannels*, 52 Mo., 108; *Green v. Kellam*, 23 Pa. St., 254; *McClellan v. Kellogg*, 17 Ill., 498.)

Maxwell, J.

This is an action to quiet the title of block 17, in the village of Neligh, in the plaintiff.

The defendant in his answer alleges "that on or about March, A. D. 1874, he purchased said premises for a valuable consideration, then fully paid to him, of said J. D. Neligh, and that under and by virtue of said purchase said defendant took immediate possession of the whole of said premises, and from that time to the commencement of this suit, and for more than ten years from the time of taking such possession, he has been in the uninterrupted, actual, open, notorious, exclusive, adverse possession of the whole of said premises under a claim of ownership to the same by virtue of said purchase, and said defendant still continues in the possession thereof and was so in possession of the same at the time of the taking the deed to the same by the plaintiff from the said John D. Neligh, and defendant alleges that before the plaintiff parted with any valuable consideration therefor the plaintiff had knowledge and notice of defendant's claim to and equities in said premises; that at the time said defendant purchased said premises from said John D. Neligh said Neligh had the legal title thereto and was the owner thereof and had the right to sell the same to said defendant; that said Neligh, however, neglected to make a deed of conveyance to said defendant, and continued to hold the title therefor in trust for said defendant," etc.

On the trial of the cause the court rendered a decree as follows: "That the defendant W. C. Galloway is the owner in fee simple and in possession of the premises in dispute in this action, to-wit, block 17, in the village of Neligh, in Antelope county, state of Nebraska, and has been in the actual possession thereof, claiming to be the owner thereof for the period of more than ten years immediately preceding the beginning of this action; that the plaintiff J. C. Crawford has no title, right, or interest in or to the said premises; that the deed of said premises from one John D. Neligh to the plaintiff J. C. Crawford, recorded in the record of said county, is and constitutes a cloud upon the

title of defendant in and to said premises, and defendant is entitled to have the same removed.

"It is therefore considered, adjudged, and decreed by the court that the defendant is the owner in fee simple of said premises, to-wit, block 17, in the village (now city) of Neligh, county of Antelope, state of Nebraska, and the title thereto is hereby quieted and confirmed in fee simple in defendant, and the plaintiff and all persons claiming under him are hereby enjoined from claiming any interest in said premises adverse to that of the defendant, or from interrupting his use and enjoyment thereof, and the cloud cast thereon by the deed to said plaintiff is hereby cleared and removed, and said deed declared to convey no right, title, or interest in or to said premises or any part thereof, and that the plaintiff pay the costs of this action, taxed at $————." The plaintiff appeals.

The testimony shows that in the year 1872 John D. Neligh, of West Point, laid out the town of Neligh; that portion of the state at that time contained but few settlers apparently, but he seems to have made considerable improvements prior to 1874, including the building of a grist mill. In the latter year he sold the mill and nearly one-fourth of the blocks in the townsite to the defendant for a consideration in round numbers of $13,000. The blocks so sold were together and comprised nearly all of the southwest fourth of the townsite. All of block 5, however, was excepted. The defendant contends that this block was sold by Neligh to him with the other blocks, but that one Thompson claimed the same and that it was thereupon agreed between Neligh and the defendant that he should have block 17 in lieu of block 5, and several witnesses testify in substance to this exchange. Neligh, however, denies it.

At the time the defendant purchased the property in question, Neligh seems to have had merely a contract for the purchase of the same, and hence he executed a quit-

claim deed to the defendant, block 17 being omitted. Some time after this, Neligh and the defendant went to New York city and succeeded in perfecting the title to the land. At that time Neligh executed a mortgage upon nearly all his portion of the townsite, but excepted block 17. He also testifies that the defendant at that time asked him to convey block 17 to him. His testimony on that point is as follows:

A. I don't recollect any talk with Mr. Galloway regarding block No. 17, unless it was in New York. I recollect something about that.

Q. Do you know whether you had any conversation in New York about block No. 17?

A. I think that he asked me to put that in; I think so.

Q. In the warranty deed?

A. Yes, sir.

Q. Mr. Galloway testified that you agreed to deed him that block subsequently; I will ask you now whether you ever made such an agreement?

A. No, sir.

Q. Did you ever tell Mr. Lambert, as he testified here, that you would fix it up or deed that block to Mr. Galloway?

A. No, sir, I never did. The first talk, any way, that I had was in New York.

Q. Did Mr. Lambert ever ask you to deed that block as he testified to?

A. No, sir.

Q. Did you ever have any conversation with Mr. Lambert about it at all?

A. No, sir; I don't think I could recollect anything of that kind, because we had positive agreements and we knew at the time.

Q. You say that you don't know that Mr. Galloway asked you for that block in New York.

A. My recollection is that he asked me to put that block

in ; I asked what for, and he said that I ought to give a block for nothing, as I had done several other people, that I had given lots to them, and I told him that I was done giving lots, that he had got the best portion of the town-site and I could not see why he wanted more ; that is the only conversation that I recollect of about that block.

Q. Mr. Galloway visited you in New York city in 1875?

A. Yes, sir.

The circumstances connected with the transaction, how-ever, tend to corroborate the defendant's testimony upon this point and show that the block in question was to be conveyed in lieu of block 5, and are sufficient to justify the court in so holding.

The undisputed testimony shows that in 1874 the de-fendant broke up the block in dispute, with other portions of the townsite, and that he raised a number of crops of wheat upon it; and that he set out a large number of trees thereon is clearly shown, and he claims to have cultivated it, either by himself or a tenant, until the present time, and he is supported in this by a large number of witnesses. Such possession, when adverse, is sufficient if actual, open, notorious, and exclusive to give the party in possession title to the property. (*Tourtelotte v. Pearce*, 27 Neb., 57, and cases cited.)

The plaintiff purchased the block in 1883, and this ac-tion was brought in 1887. The bar of the statute, there-fore, is complete, and the defendant on both grounds stated is entitled to the possession. The testimony, however, shows that the plaintiff has paid a large amount of taxes on the land, which he is entitled to have refunded, with in-terest thereon, before a decree will be rendered divesting him of his entire interest therein.

The case is therefore referred to J. D. Hatfield to find the amount due the plaintiff for taxes and interest thereon, and the defendant is required to pay the same within ninety

days after the filing of the report, or said land, or so much thereof as may be necessary, will be sold as upon execution to satisfy the same, and as thus modified the judgment is affirmed.

JUDGMENT ACCORDINGLY.

THE other judges concur.